UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANGELA P. MARCHMAN,

    **Plaintiff,**

vs.                                Case No. 8:05-CV-156-T-27EAJ

CITY OF CLEARWATER and KENT REEVES,
in his individual capacity as a City of Clearwater,
Florida police officer,

    **Defendants.**
_____/

## ORDER

**BEFORE THE COURT** are Defendants' Motion for Summary Judgment (Dkt. 20), Defendants' Memorandum in Support (Dkt. 21), and Plaintiff's Response (Dkt. 31). Upon consideration, Defendant's motion is GRANTED in part and DENIED in part.

Plaintiff, Angela P. Marchman, filed this action against the City of Clearwater ("the City") and Kent Reeves ("Reeves") in his individual capacity as a City of Clearwater police officer (collectively "Defendants"). (Dkt. 1, Compl.). Plaintiff's Complaint asserts the following claims:

    1)    violation of her constitutional rights based on false arrest, use of excessive force, and malicious prosecution pursuant to 42 U.S.C. § 1983 against Reeves (Count I);

    2)    false arrest pursuant to Florida law against Reeves and the City (Count II);

    3)    battery pursuant to Florida law against Reeves and the City (Count III);

    4)    violation of her constitutional rights based on a failure to train and supervise pursuant to 42 U.S.C. § 1983 against the City (Count IV). (Dkt. 1).

## Factual Background[1]

On October 17, 2003, Plaintiff, Brian Sims, Daniel Sanborn, and Michael Feldman spent the evening socializing at Feldman's mother's house. (Dkt. 25, Deposition of Angela Marchman (hereinafter "Plaintiff's Depo.") at 21-23). All four of them were drinking beer. (Plaintiff's Depo. at 24; Dkt. 23, Deposition of Michael Feldman (hereinafter "Feldman's Depo.") at 6; Dkt. 28, Deposition of Daniel Sanborn (hereinafter "Sanborn's Depo.") at 33). Plaintiff had approximately three beers that night. (Plaintiff's Depo. at 25). Feldman had four or five beers. (Feldman's Depo. at 14). Sanborn was intoxicated. (Sanborn's Depo. at 29). Sometime in the early morning hours of October 18th, Plaintiff, Sims, Feldman and Sanborn decided to go to the beach in Clearwater. (Plaintiff's Depo. at 23-24). Sanborn drove them from North Tampa to Clearwater.[2] (Plaintiff's Depo. at 22-24; Sanborn's Depo. at 26-27).

Reeves was working as a patrol officer for the City of Clearwater Police Department on October 18th. (Dkt. 26, Deposition of Kent Reeves (hereinafter "Reeves' Depo.") at 14). At approximately 5:45 a.m., Reeves noticed that the van driven by Sanborn was weaving within its lane

---

[1] The Court views all evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997).

[2] Plaintiff, Sanborn, and Feldman provided inconsistent testimony at their depositions. (A transcript of Sims' deposition, if taken, was not provided to the Court.) Plaintiff testified that she and her friends left Feldman's mother's house to drive to Clearwater at approximately 2:00 a.m., Sanborn testified that it was sometime between midnight and 1:00 a.m., and Feldman testified that it was approximately 4:00 a.m. (Plaintiff's Depo. at 23; Sanborn's Depo. at 25; Feldman's Depo. at 13). Plaintiff, Sanborn, and Feldman did not provide consistent explanations as to where they were or what they were doing between the time they left Tampa to drive to Clearwater and 5:45 a.m., when they were pulled over. Sanborn explained the fact that it took them approximately three hours and forty five minutes to get to Clearwater by stating: "Because, usually, when most people are intoxicated while they're driving, they usually don't speed." (Sanborn's Depo. at 29). They were pulled over by Reeves before they made it to the beach. (Plaintiff's Depo. at 23).

and into the center lane on Gulf to Bay Boulevard. He pulled the van over "for possibility of DUI, or medical problems." (Reeves' Depo. at 14-15). Reeves approached the van, spoke to Sanborn, and asked for his driver's license, registration and proof of insurance. (Reeves' Depo. at 15). Upon speaking with Sanborn, Reeves "detected a strong odor of alcohol omitting from the van, from his person, observed he had slurred speech, blood shot eyes and was having a difficult time just answering ... basic questions, at that time." (Reeves' Depo. at 15). At that point, Reeves contacted the police department communication center and requested a DUI officer and back-up officers to respond to the scene since there were several people in the van. (Reeves' Depo. at 15, 18-19).

Officers Renfroe and Jerard responded to the scene to assist Reeves. (Reeves' Depo. at 18). Sanborn was asked to exit the van, and Renfroe began talking to him. (Reeves' Depo. at 18). Reeves and Jerard requested that the other individuals exit the van. (Reeves' Depo. at 19). Sims and Feldman exited the van and were instructed to sit on the curb. (Reeves' Depo. at 24). Reeves noticed Plaintiff "sleeping or passed out" in the back of the van. (Reeves' Depo. at 21-22). Reeves woke Plaintiff up after several attempts and asked her to exit the van while the DUI investigation was conducted. (Reeves' Depo. at 24-25). In response, Plaintiff kept asking "why," and Reeves explained that he needed all of the occupants out of the van. (Reeves' Depo. at 26). Reeves observed that all of the people in the van were intoxicated, had "slurred speech, blood shot eyes, and reeked of alcohol." (Reeves' Depo. at 19).

The parties dispute what transpired next. According to both Sanborn and Feldman, Reeves and the other police officers dragged Plaintiff out of the van and threw her up against the side of the van. (Sanborn's Depo. at 35; Feldman's Depo. at 19-20). Sanborn and Feldman testified that after she was up against the van, she was slammed to the ground. (Sanborn's Depo. at 36; Feldman's

Depo. at 20). Feldman testified that three or four police officers "kicked her once" and then "pretty much beat her up" with their feet, knees and arms. (Feldman's Depo. at 20-21). Feldman also testified that one officer picked Plaintiff's head up by the hair and then dropped it back to the ground.[3] (Feldman's Depo. 21). Sanborn testified that Plaintiff was not resisting the officers.[4] (Sanborn's Depo. at 36).

Plaintiff does not have a clear memory of the events of that evening. (Plaintiff's Depo. at 27). She testified that she was asleep when the van stopped and was not aware that the van had been pulled over by the police. (Plaintiff's Depo. at 26-27). The first thing she remembers upon waking up is feeling something on her face, "like getting hit in the face or something." (Plaintiff's Depo. at 27). The next thing she remembers is "being up against the van and feeling pressure on [her] face" and "being on the ground" with someone holding on to both of her arms. (Plaintiff's Depo. at 28-29). After that, she remembers "being in a police car." (Plaintiff's Depo. at 28-29). Plaintiff testified that she does not recall hitting or kicking anyone, what the officers said to her, being handcuffed, being examined by fire rescue, or being taken to the hospital. (Plaintiff's Depo. at 28-35). Plaintiff alleges that her lip was injured, her knee was scraped and bruised, her chin was scraped and swollen, and she had a lump and bruise on her side. (Plaintiff's Depo. at 39-40).

According to Reeves, after he made repeated requests for Plaintiff to exit the van, she started to walk out of the van and began to fall. (Reeves' Depo. at 26). Reeves testified that he put his arm

---

[3] Neither Sanborn nor Feldman could say whether Reeves was one of the officers who kicked or injured Plaintiff while she was on the ground. (Sanborn's Depo. at 38; Feldman's Depo. at 22).

[4] In her opposition to Defendants' motion for summary judgment, Plaintiff argues that in addition to Sanborn, Feldman also testified that she was not resisting the officers. (Dkt. 31, p. 2). However, Plaintiff did not provide the Court with a copy of the portion of Feldman's transcript that contains this testimony.

4

out in front of her and grabbed one of her arms to prevent her from falling. (Reeves' Depo. at 26). Reeves was able to prevent the fall, but Plaintiff then began screaming "don't touch me." (Reeves' Depo. at 26). Plaintiff began pulling away and swinging her arms at him, and at one point, he felt as though Plaintiff was going to try and hit him by throwing her elbows back to hit him in the head. (Reeves' Depo. at 27). Reeves testified that Plaintiff kept screaming, throwing her arms, and started kicking him. (Reeves' Depo. at 27). Reeves kept telling Plaintiff to calm down and he attempted to grab her arms to place her under arrest for obstruction. (Reeves' Depo. at 29). Because Plaintiff was kicking and flailing around, Reeves testified that he "directed her to the ground" face-down and, with the assistance of Jerard, handcuffed her arms behind her back, placing her under arrest. (Reeves' Depo. at 31). Thereafter, Plaintiff repeatedly refused to get into the police car, so Reeves and Jerard forced her into the vehicle. (Reeves' Depo. at 33-34).

Once she was in the police car, Reeves noticed blood on Plaintiff's lip and called fire rescue to the scene to examiner her. (Reeves' Depo. at 37-38). He did not know what caused the blood. (Reeves' Depo. 37-38). He did not observe any other injuries on Plaintiff and she did not complain to him of any other injuries. (Reeves' Depo. at 38). Plaintiff was examined by fire rescue and taken to the hospital for a medical examination.[5] (Reeves' Depo. at 38). After she was examined and medically cleared by the hospital, Reeves transported her to the Pinellas county jail where she was booked and charged with obstruction/resisting an officer without violence. (Reeves's Depo. at 39). Plaintiff was released from jail later that day and the state attorney ultimately decided not to prosecute. (Plaintiff's Depo. at 36; Dkt. 31-2).

---

[5] The nurse who examined Plaintiff at the hospital testified that Plaintiff complained only of the lip injury and no other injuries were reported or observed. (Dkt. 22, Deposition of Angela Crawford, at 17-20).

Reeves denies that he used excessive force on Plaintiff. (Reeves' Depo. at 39). He testified that he used "just enough force ... to subdue her, prevent her from causing any further injury to myself or herself." (Reeves' Depo. at 39). Plaintiff testified that she has limited memory of the events on October 18th, and that some of her memories are based on things told to her by Sanborn, Feldman, and Sims. (Plaintiff's Depo. at 27, 38).

## Applicable Standards

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004) (*internal citations omitted*). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260.

A party opposing a motion for summary judgment may not rest upon the mere allegations or denials of her pleading and must respond with specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56; *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004). The opposing party's evidence must be significantly probative to support the claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Judgment in favor of a party is proper where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party on the issue before the Court. Fed. R. Civ. P. 56.

## Discussion

In the motion for summary judgment, Reeves argues that he is protected by qualified immunity and is immune from liability for Plaintiff's § 1983 claim (Count I) (Dkt. 21, pp. 6-10). Reeves also argues that he is protected by statutory immunity and is immune from liability for Plaintiff's state law claims for false arrest and battery (Counts II and III). (Dkt. 21, pp. 11-13). Reeves and the City argue that they are entitled to judgment on Plaintiff's state law claims for false arrest and battery because there was probable cause for the arrest and because the amount of force used was not excessive (Counts II and III) (Dkt. 21, pp. 11-13). Finally, the City argues that it is entitled to judgment on Plaintiff's § 1983 claim because Plaintiff cannot prove a failure to train or supervise claim (Count IV) (Dkt. 21, pp. 13-16).

### *42 U.S.C. § 1983 Claim Against Reeves (Count I)*

I. *Qualified Immunity*

Qualified immunity protects government officials performing discretionary functions from liability "where their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997) (*quoting Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). As long as their conduct is not unlawful, the doctrine of qualified immunity exempts government officials from damage suits to enable them to perform their responsibilities without threats of liability. *Hutton v. Strickland*, 919 F.2d 1531, 1536 (11th Cir. 1990) (*citations omitted*). Qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law." *McCoy v. Webster*, 47 F.3d 404, 407 (11th Cir. 1995) (*quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To determine the propriety of qualified immunity, the government official's conduct is evaluated under an "objective legal reasonableness" standard. *Koch v. Rugg*, 221 F.3d 1283, 1295

(11th Cir. 2000) (*citations omitted*). The official's subjective intent is irrelevant to the inquiry. *Id.* Under the "objective legal reasonableness" standard, a government official performing discretionary functions is protected if "a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Hardin v. Hayes*, 957 F.2d 845, 848 (11th Cir. 1992).

In this Circuit, a two-part analysis is applied to a defense of qualified immunity. *Hutton*, 919 F.2d at 1537-38 (*citing Rich v. Dollar*, 841 F.2d 1558, 1563-64 (11th Cir. 1988)). First, the defendant must prove that he was acting within the scope of his discretionary authority when the alleged wrongful act occurred. *Id.* If the defendant meets this burden, the plaintiff must show that: 1) the defendant violated clearly established law based upon objective standards; and 2) there is a genuine issue of fact concerning the defendant's violation of that clearly established law. *Id.*

In Count I of her Complaint, Plaintiff alleges a § 1983 claim against Reeves on grounds that he violated her Fourth and Fourteenth Amendment rights, including claims of excessive force, false arrest, and malicious prosecution. Reeves argues that he is entitled to qualified immunity on each of these claims. It is undisputed that Reeves was acting within the scope of his discretionary authority at the time of Plaintiff's arrest. (Dkt. 21, p. 7; Dkt. 31, p. 5). In addition, it is undisputed that the law clearly establishes protections against false arrest, use of excessive force, and malicious prosecution. Therefore, the only issue is whether Reeves' conduct was unlawful.

To demonstrate that summary judgment is appropriate on a qualified immunity defense, the defendant must show that he is entitled to judgment as a matter of law (i.e., that he is entitled to immunity) and that there are no genuine issues of material fact pertinent to that law. *Sims v. Metro. Dade County*, 972 F.2d 1230, 1233-34 (11th Cir. 1992) (*citing Rich v. Dollar*, 841 F.2d 1558, 1562

(11th Cir. 1988) ("one who claims qualified immunity must establish that no genuine issues of material fact exist"). Similarly, a plaintiff can avoid summary judgment based on qualified immunity by showing, accepting her version of the facts as true, that genuine issues of material fact exist relating to defendant's entitlement to immunity.[6] *Id.*

### A.   *Use of Excessive Force*

Plaintiff argues that Reeves' use of force prior to and during her arrest was so excessive as to give rise to a § 1983 violation. Viewing all evidence and factual inferences in Plaintiff's favor, Feldman and Sanborn's description of what occurred supports Plaintiff's contention that the force used by Reeves was unnecessary. However, even if the use of force is unnecessary, a defendant is entitled to qualified immunity unless it was clearly established that the amount of force used was unlawful. *Goodman v. Town of Golden Beach*, 988 F. Supp. 1450, 1456 (S.D. Fla. 1997). "Not every push or shove, even if it may seem unnecessary in the peace of a judge's chambers," violates the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 396 (1989) *(citations omitted).* The reasonableness of the degree of force used in a given situation may depend on the need for force, the relationship between the need and the amount of force used, the extent of the injury inflicted, and whether the force was used in good faith. *Byrd v. Clark*, 783 F.2d 1002, 1006 (11th Cir. 1986) *(citations omitted).* Qualified immunity applies to an excessive force claim unless the circumstances would inevitably lead a reasonable officer in the defendant's position to conclude that the force used was unlawful. *Gold*, 121 F.3d at 1446.

---

[6] Where the information possessed by the official at the time of the relevant conduct is in dispute, summary judgment on a qualified immunity defense is not appropriate. For example, "if what the policeman knew prior to the arrest is genuinely in dispute, and if a reasonable officer's perception of probable cause would differ depending on the correct version, that factual dispute must be resolved by the fact finder." *Prokey v. Watkins*, 942 F.2d 67, 73 (1st Cir. 1991).

The parties dispute the necessity and amount of force used by Reeves prior to and at the time of Plaintiff's arrest. Reeves contends that he used "just enough force ... to subdue her, prevent her from causing any further injury to myself or herself." (Reeves' Depo. at 39). Conversely, Plaintiff has offered the testimony of Feldman and Sanborn, who testified that Reeves and the other officers dragged Plaintiff out of the van, threw her up against the side of the van, slammed her on the ground, kicked her, and then "pretty much beat her up" with their feet, knees and arms.[7] (Sanborn's Depo. at 35-36; Feldman's Depo. at 19-21).

Sanborn also testified that Plaintiff was not resisting the officers, which would suggest that the degree of force used on her was not reasonable. (Sanborn's Depo. at 36). Although Plaintiff does not have a clear memory of the events, she testified that as a result of the force used by Reeves and other officers, her lip was injured, her knee was scraped and bruised, her chin was scraped and swollen, and she had a lump and bruise on her side. (Plaintiff's Depo. at 39-40). Based on this conflicting testimony, there are genuine issues of material fact regarding the amount of force used and whether the force used was unlawful. In addition, Plaintiff has produced sufficient evidence which, if believed by a jury, would lead a reasonable officer in Reeves' position to conclude that the force used by Reeves was unlawful. *Gold*, 121 F.3d at 1446. Accordingly, Reeves is not entitled to qualified immunity on Plaintiff's § 1983 excessive force claim.

---

[7] Defendants note that Sanborn and Feldman were intoxicated at the time they witnessed Plaintiff's arrest, apparently in an effort to suggest that their testimony lacks credibility. On summary judgment, however, the Court "draws all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded particular evidence." *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) (*citing Anderson*, 477 U.S. at 255).

*B.    False Arrest*

"To prove a § 1983 claim for false arrest, a plaintiff must demonstrate the absence of probable cause."[8] *Sullivan v. City of Pembroke Pines*, 2006 WL 63959, *2 (11th Cir. Jan. 12, 2006). An officer is entitled to qualified immunity on a § 1983 claim of false arrest where the officer had "arguable probable cause," or where "reasonable officers in the same circumstances and possessing the same knowledge as the [d]efendants could have believed that probable cause existed to arrest" the plaintiff.[9] *Redd v. City of Enterprise, Ala.*, 140 F.3d 1378, 1382 (11th Cir. 1998).

In this case, Reeves arrested Plaintiff for obstruction/resisting an officer without violence. Obstruction or resisting without violence applies to any situation where a person willfully interferes, resists, obstructs, or opposes an officer in the lawful activities of the police. *Clark v. State*, 2005 WL 1026187, *2 (Fla. Dist. Ct. App. May 4, 2005); *N.H. v. State of Fla.*, 890 So. 2d 514, 516 (Fla. Dist. Ct. App. 2005); *see also* FLA. STAT. § 843.02. Reeves argues that he had probable cause to arrest Plaintiff because she refused to exit the van despite repeated requests, and once she did exit the van, she attempted to kick and hit him. (Dkt. 21, p. 9). Plaintiff testified that she does not recall resisting Reeves. (Plaintiff's Depo. at 28-35). Sanborn testified that Plaintiff was not resisting the officers. (Sanborn's Depo. at 36).

Reeves' and Plaintiff's versions of the events prior to and surrounding the arrest are in direct conflict and there are accordingly disputed issues of material fact regarding their conduct. Accepting

---

[8] "The existence of absence of probable cause can be determined as a matter of law from the facts." *Sullivan*, 2006 WL 63959 at *2.

[9] "Because many situations which confront officers in the course of executing their duties are more or less ambiguous, room must be allowed for some mistakes on their part. But the mistakes must be those of reasonable men, acting on facts leading sensibly to their conclusions of probability." *Marx v. Gumbinner*, 905 F.2d 1503, 1507 (11th Cir. 1990) (*quoting Brinegar v. United States*, 338 U.S. 160, 176 (1949)).

Plaintiff's allegations as true, genuine issues of material fact exist as to the circumstances surrounding the arrest, including whether Reeves had probable cause to arrest Plaintiff. Therefore, Reeves is not entitled to qualified immunity on Plaintiff's § 1983 false arrest claim.

### C. Malicious Prosecution

To establish a malicious prosecution claim under § 1983, a plaintiff must prove a violation of her constitutional right to be free from unreasonable seizures and the elements of a common law malicious prosecution claim. *Wood v. Kesler*, 323 F.3d 872, 881 (11th Cir. 2003) (*citations omitted*). To prove malicious prosecution, a plaintiff must establish each of six elements: "(1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding." *Durkin v. Davis*, 814 So. 2d 1246, 1248 (Fla. Dist. Ct. App. 2002).

As discussed, there are genuine issues of material fact regarding whether Reeves had probable cause to arrest Plaintiff. This fact issue precludes the defense of qualified immunity and entry of summary judgment on Plaintiff's § 1983 malicious prosecution claim.

### II. Summary Judgment

On this record, there are genuine issues of material fact regarding whether Reeves' conduct violated clearly established law and Reeves' conduct pertinent to his qualified immunity defense is in dispute. Reeves has offered his own deposition testimony describing Plaintiff's conduct as obstructing and resisting his actions as a police officer. On the other hand, Plaintiff has offered her

own testimony and the testimony of two eye witnesses, which contradicts Reeves' testimony. Accepting Plaintiff's allegations regarding the events surrounding her arrest as true, genuine issues of material fact exist regarding Reeves' entitlement to immunity on the excessive force, false arrest, and malicious prosecution claims. Summary judgment on qualified immunity grounds is therefore precluded.[10]

In addition, the same issues of material fact preclude summary judgment on the merits of Plaintiff's § 1983 claims apart from qualified immunity. All of the material facts alleged by Plaintiff in support of her claims of excessive force, false arrest and malicious prosecution are disputed. Accordingly, Reeves motion to summary judgment on Count I of Plaintiff's Complaint is denied.

***State Law Claims of False Arrest and Battery Against the City and Reeves (Count II and III)***

*I.     False Arrest*

Reeves and the City move for summary judgment on Plaintiff's state law claim of false arrest on grounds that Reeves had probable cause for the arrest and that Reeves and the City are entitled

---

[10] Reeves' motion for summary judgment on qualified immunity grounds is denied without prejudice. Although he is not entitled to qualified immunity on summary judgment, he may nevertheless be entitled to qualified immunity as a matter of law at trial. *See Sims*, 972 F.2d at 1233-34. The Eleventh Circuit has explained:

> The denial of a motion for summary judgment based on qualified immunity implies one of two possible conclusions: (1) *taking the official's version of the facts as true*, the district court concluded that the official's actions violated clearly established law; or (2) *assuming the plaintiff's version of the facts to be true*, the district court concluded that the official's alleged actions violated clearly established law. Under the first conclusion, nothing in the subsequent course of the district court's proceedings could alter its holding. Under the second conclusion, however, unresolved factual issues may prevent the early disposition of the defense. Thus, under the second conclusion, a district court may be forced to deny a pretrial motion for summary judgment and decide the issue on a motion for directed verdict. In such a situation, it would be appropriate to deny a motion for summary judgment "without prejudice."

*Id.* at 1233-34 (*citations omitted*) (*emphasis in original*).

13

to sovereign immunity pursuant to FLA. STAT. § 768.28(9)(a), which bars the claim. (Dkt. 21, pp. 11-12). Defendants are not entitled to summary judgment on either ground. As discussed, there are genuine issues of material fact regarding whether Reeves had probable cause to arrest Plaintiff. In addition, Florida law does not provide sovereign immunity for claims of false arrest. *Lester v. City of Tavares, Fla.*, 603 So. 2d 18, 19 (Fla. Dist. Ct. App. 1992) (*citations omitted*). Accordingly, Defendants' motion for summary judgment on Count II of Plaintiff's Complaint is denied.

*II.    Battery*

Reeves and the City also move for summary judgment on Plaintiff's state law claim of battery, arguing that the force used on Plaintiff by Reeves was reasonable and not excessive and that Reeves and the City are entitled to immunity pursuant to FLA. STAT. § 768.28(9)(a) and FLA. STAT. § 776.05(1).[11] (Dkt. 21, pp. 12-13). A battery claim based on excessive force used by a police officer is analyzed by focusing on whether the amount of force used was reasonable under the circumstances. *City of Miami v. Sanders*, 672 So. 2d 46, 47 (Fla. Dist. Ct. App. 1996). Again, the record reveals genuine issues of material fact regarding the actual force used by Reeves and whether that force was reasonable under the circumstances.

Although sovereign immunity pursuant to FLA. STAT. 768.28(9)(a) generally protects government officials from individual liability for tort damages, an exception applies when a governmental official "acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property." *Thompson v. Douds*, 852 So. 2d 299, 309 (Fla. Dist. Ct. App. 2003). Here, there are genuine issues of material fact regarding Reeves' conduct,

---

[11] Defendants have not argued any basis for summary judgment on Plaintiff's battery claim against the City.

14

including whether he acted in bad faith, with malicious purpose, or with wanton and willful disregard for Plaintiff's rights, safety, or property. *See id.*

Similarly, immunity pursuant to FLA. STAT. § 776.05(1) is inappropriate. Section 776.05(1) provides: "A law enforcement officer, or any person whom the officer has summoned or directed to assist him or her, need not retreat or desist from efforts to make a lawful arrest because of resistance or threatened resistance to the arrest. The officer is justified in the use of any force .... which he or she reasonably believes to be necessary to defend himself or herself or another from bodily harm while making the arrest." What force, if any, Reeves reasonably believed was necessary to defend himself from Plaintiff's alleged resistance is disputed. Accordingly, Defendants' motion for summary judgment on Count III of Plaintiff's Complaint is denied.

### *42 U.S.C. § 1983 Claim Against the City (Count IV)*

Plaintiff argues that since an officer must have probable cause to conduct an arrest and Reeves did not have probable cause to arrest her, the City is liable for failure to train or supervise. (Dkt. 31, p. 11).

A municipality is only liable under § 1983 for actions of a police officer, or for failure to train or supervise a police officer, in limited circumstances where a constitutional violation is caused by "an official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled it assumes the force of law." *Denno v. Sch. Bd. of Volusia County, Fla.*, 218 F.3d 1267, 1276 (11th Cir. 2000). To state a claim against a municipality for failure to train or supervise under § 1983, a plaintiff must show: 1) the municipality inadequately trained or supervised its employees; 2) the failure to train or supervise is based on a city policy or evidences a "deliberate indifference" to the rights of persons effected by the failure; and

15

3) the failure to train or supervise resulted in or is causally linked to a constitutional violation. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 386-87 (1989).

The record is devoid of evidence in support of Plaintiff's failure to train or supervise claim. Plaintiff has not provided any evidence of a city policy or a "deliberate indifference" to the rights of persons effected by the failure to train or supervise. Further, Plaintiff has not provided any evidence that the City's alleged failure to train or supervise resulted in or was causally linked to the alleged violations of her constitutional rights. Even assuming that Reeves' conduct violated Plaintiff's constitutional rights, a single incident of unconstitutional activity is insufficient to impose liability for failure to train or supervise against a municipality. *City of Okla. v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability ... unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy ... which ... can be attributed to a municipal policymaker.") On this record, Plaintiff cannot prove her failure to train or supervise claim. Accordingly, the City is entitled to summary judgment on Count IV of Plaintiff's complaint.

Accordingly, it is

**ORDERED AND ADJUDGED** that Defendants' Motion for Summary Judgment (Dkt. 20) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

1) Defendant, Kent Reeves' Motion for Summary Judgment as to Plaintiff's 42 U.S.C. § 1983 claim (Count I) is **DENIED without prejudice**.

2) Defendants, City of Clearwater and Ken Reeves' Motion for Summary Judgment as to Plaintiff's state law claims of false arrest and battery (Count II and III) is **DENIED**.

3) Defendant, City of Clearwater's Motion for Summary Judgment as to Plaintiff's 42 U.S.C. § 1983 claim for failure to train or supervise (Count IV) is **GRANTED**.

**DONE AND ORDERED** in chambers this 8th day of February, 2006.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record